UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| In re Tina Smat | ) | Chapter 13 |
| | ) | |
| Debtor, | ) | Case No. 22-06253 |
| | ) | |
| | ) | Judge David D. Cleary |
| | ) | |

### UNITED CREDIT UNION'S
### OBJECTION TO CONFIRMATION OF PLAN

Alliant Credit Union (the "Credit Union"), by and through its attorney, Dariusz Wator of Wator & Associates, P.C., objects to confirmation of the Chapter 13 Plan proposed by the debtor, Tina Smat (the "Debtor"). In support of its objection, the Credit Union states as follows:

#### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to *28 U.S.C. §1334*.

2. This is a core proceeding pursuant to *28 U.S.C. §157 (b)(2)(L)*.

#### GENERAL AVERMENTS

3. On June 2, 2022, Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code. On the same day, Debtor filed his proposed Chapter 13 Plan.

4. Debtor executed a written mortgage and note ("the Agreement") with Alliant Credit Union on August 9, 2013. Said Agreement was secured by the real property commonly known as 2036 W. Barry Avenue, Chicago, Illinois 60618 ("the Property"). Both the note and mortgage in the Agreement were executed by both Debtor and Debtor's spouse - David Smat. The Agreement provided for the financing of $935,000.00 at

3.125% interest per annum with payments commencing on October 1, 2013. Initial payments being in the amount of $4,005.31 per month until September 1, 2043 (see attached Exhibit A). The note was adjustable commencing with September 1, 2020. Pursuant to this provision the interest rate was subject to change on annual basis. The Agreement did not call for an escrow for taxes or insurance, and Debtor was obligated to pay any amounts due and owing for real estate taxes to Cook County Treasurer and insurance premiums independent of the payments to the Credit Union;

5. Debtor ceased making payments on the Agreement with the payment due on August 1, 2017. Since that time no payments on the monthly installments have been received;

6. At approximately the same time Debtor ceased paying real estate tax obligations on the Property. To mitigate its damages the Credit Union, as provided for in the Agreement, paid the real estate tax obligations for the Property in succeeding years;

7. Debtor's Chapter 13 plan, filed at the time of the filing of her petition, incorporates a monthly installment payment of $4,005.00 to the Credit Union. The plan further provides for an arrearage of $352,493.00 with payments through the plan on said arrearage bearing no interest. Finally, the Plan calls for a monthly payment on this arrearage in the amount of $5,874.88;

8. The Credit Union intends to file a claim secured by an interest in the Property and is in the course of collating the necessary information to complete its Form 410-A. Due to the length of Debtor's default and the numerous transactions this collation is on-going as the Credit Union seeks to assure of the completeness and correctness of its accounting.

## OBJECTION BASED ON CHAPTER 13 PLAN FILED BY DEBTOR

9. The Credit Union incorporates by reference the allegations contained in paragraphs 1-8 above as though set forth fully herein;

10. The Credit Union objects to the Debtor's Plan based on the following:

    a. As an initial matter Debtor's correct payment (principal and interest) based on the most recent interest rate adjustment is $3,858.31;

    b. The Plan fails to provide for an interest rate to be charged on the arrearage to be paid over the life of the Plan. This is particularly egregious under the circumstances in this case, insofar as over 1/3 of the accumulated arrearage to the Credit Union consists of the Credit Union's funds used to pay for the Debtor's real estate tax obligations. Obligations she has failed to meet over a five-year span. Thus forcing the Credit Union to expend $110,865.25 in funds to mitigate its losses and prevent the Property from being sold at tax auction. Failing to charge an interest on the arrearage at an amount at least equal to the interest due and owing under the Agreement (at present this rate is 2.75% based on the most recent adjustment per the note), serves to reward Debtor for her conduct, while at the same failing to adequately protect the Credit Union from further loss during the pendency of the Plan. Under this Plan, as the massive arrearage owed to the Credit Union is slowly paid off during the sixty month term of payments (not to mention the consequences of a default on the Plan and eventual dismissal of this petition in its entirety prior to full payment) there is an enormous risk of the Plan failing through non-payment of trustee payments, payments to creditors and other relevant matters;

c. In light of the preceding, and despite the Agreement being listed as a secured debt with the right for interest accrual on any amounts outstanding (including the arrearage), the Plan fails to list the correct arrearage amount of $376,701.30 (see attached Exhibit "B"). In order to comply with the mandate, set forth in *§1325(a)(5)(B)(iii)* of the Bankruptcy Code, Debtor is required to propose a Plan that provides equal, fixed monthly payments to the Credit Union in a manner sufficient to satisfy its secured claim, *i.e.* $6,727.06 per month, as calculated by a secured claim for the arrearage of $376,701.30 with a 2.75% interest rate on said amount amortized over sixty (60) months.

d. The Plan also cites an arrearage of $181,587.00 due and owing to US Bank (a junior lien holder on the Property by way of a subordination). The Plan calls for monthly installment payments to US Bank in the amount of $2,545.10 and arrearage payments of $3,026.45. Such a scheme of payments will lead to a combined total of $334,293.00 being paid to US Bank over the term of the Plan. This is nearly double the arrearage claimed by Debtor in her Plan. The remainder of Debtor's schedules are not helpful in resolving the conundrum of this accounting insofar as her Schedule D states that the amount due to US Bank is $270,000.00. Bearing in mind that the original amount of the note with US Bank at the time of the of its execution on November 24, 2008 was $274,000.00 one is hard pressed to resolve the discrepancy between the amount in Debtor's Schedule D with the arrearage and payment schedule stated in the Plan. Does debtor owe a total of $270,000 with an arrearage of $181,587.00? Is the $181,587.00 owed on top of that $270,000 claimed in Schedule D? It is hard to

answer these questions from the schedules and as the US Bank debt was accrued in 2008, and even if Debtor ceased making payments to US Bank at the same time as her default with the Credit Union, that $181,587.00 in arrearages would have had to accrue in the intervening four years on a debt amount that is ¼ of the debt owed to the Credit Union. It is highly likely that arrearage amount noted in the Plan represents the entire amount due to US Bank (speculative on the part of the Credit Union, but all that is possible insofar as U.S. Bank has yet to file a proof of claim at the time of the drafting of this objection). And under the circumstances, the combined total of $5,571.55 in payments per month to US Bank is inappropriate and excessive as a significantly lower amount would be needed to cure the arrearage (once again the combined amount paid to US Bank under this Plan would be $334,293.00). Allowing such is prejudicial to the Credit Union and contrary to the Bankruptcy Code.

11. The Credit Union further objects to confirmation as Debtor's Schedule A/B fails to account for the proper value of the Property. Schedule A/B purports to represent that the Property is valued at $990,000.00. The Credit Union has secured a broker price opinion evidencing a value of $1,550,000.00 for a property of this type in the relevant neighborhood and based on market conditions;

12. For the foregoing reasons the Credit Union files this objection insofar as the Plan and petition schedules assure that the office of the Chapter 13 Trustee will not pay the Credit Union's secured claim adequately unless amendments are made to the Plan necessary to address the above matters;

## OBJECTION BASED ON FAILURE TO PROVIDE ADEQUATE PROTECTION

13. The Credit Union incorporates by reference paragraphs 1-12 and states as follows in support of its Objection;

14. Pursuant to *11 U.S.C. § 542(a)* "[e]xcept as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. As referred above *11 U.S.C. § 363(e)* states "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362)."

15. Based on the Debtor's past history of failure to pay the real estate taxes on this property in the last five years since her, and her husband's, default on the Agreement, the failure to account for said obligation in the Plan is a cause of grave concern for the Credit Union.

16. At the present time $110,865.25 of the arrearage due and owing to the Credit Union by Debtor consists solely of real estate taxes. With an average tax bill on the Property of

$22,000.00 per annum, this means that Debtor has not paid a single dollar of the real estate tax bill for the Property since 2017.

17. Debtor's Schedule J proposes that she is budgeting $1,900.00 per month towards said taxes. Her Schedule I shows that Debtor's income is $3,416.80. The amount in Schedule J reflects a payment for real estate taxes representing almost 50% of her disposable income. It is obvious that this budget item, along with most others noted in Schedule J as well as all payments in the Plan are reliant on Debtor's husband full cooperation throughout the entirety of the Plan (Debtor's husband secured a Chapter 7 discharge in 2017). Even under the best of circumstances a Plan of this nature with these underlying facts has a very high likelihood of failing over the course of a sixty-month period;

18. Permitting Debtor to make payments on the real estate taxes for the Property on her own recognizance leaves the Credit Union once again at the mercy of Debtor's good faith representation that she will now, finally, comply with the obligation to pay real estate taxes – unlike her conduct in the prior five years that led to the expenditure of the Credit Union's funds in the amount of $110,865.25;

19. Permitting the confirmation of the Debtor's Plan where the real estate taxes are paid outside the plan or where they are not directly escrowed with the Credit Union is likely to lead to a failure to pay this obligation and place the Credit Union in a position of having to once again pay out capital on Debtor's obligation, thus adding to the massive outlay already expended.

20. As such, Debtor's Plan fails to comply with applicable provisions of the Bankruptcy Code and must provide for and satisfy the objections specified herein to be feasible and to provide the Credit Union adequate protection.

21. Finally, the Credit Union has incurred reasonable attorneys' fees as a result of Debtor's bankruptcy filing and this Objection. To date, the attorneys' fees incurred by the Credit Union total $650.00, as follows: (i) Objection to Confirmation fee is $650.00.

WHEREFORE, the objector, Alliant Credit Union, prays that this Honorable Court enter an order denying confirmation of the Debtor's Chapter 13 Plan, award it reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dariusz T. Wator, Esq.
Attorney for Creditor/Movant

Wator & Associates, P.C.
Attorneys at Law
10711 S. Roberts Road
Palos Hills, Illinois 60465
Tel:   (708) 974-0000
Fax:   (708) 974-0011
Email: bankruptcy@myillinoisatty.com
ARDC No. 6279496