## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Tina Smat, | ) | Case No. 22-06253 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |
| | ) | |

## DEBTOR'S RESPONSE TO MOTION FOR RELIEF
## FROM AUTOMATIC STAY FILED BY U.S. BANK, N.A.

Tina Smat (the "**Debtor**"), now comes in response to the motion for relief from the automatic stay (the "**Motion**") filed by U.S. Bank National Association ("**U.S. Bank**"), through which it seeks relief to pursue nonbankruptcy remedies relating to 2036 W. Barry Avenue, Chicago, IL 60618 (the "**Property**").

The circumstances alleged by U.S. Bank in their Motion, do not, taken together, give rise to "cause" for relief, such that relief would be warranted under 11 U.S.C. 362(d)(1). The Debtor avers that appropriate relief for U.S. Bank would be denial of the motion for relief without prejudice.

U.S. Bank is protected by an equity cushion, and the circumstances giving rise to the default – a lag in the co-debtor's business income – are transitory and reasonably likely to be resolved in short order. Balancing the hardship that relief would pose the Debtor against the hardship that the status quo would pose to U.S. Bank strongly suggests that the circumstances are not present under which relief would be appropriately granted.

## BACKGROUND

The facts at bar are uncomplicated. U.S. Bank holds a junior lien on the Property. Alliant Credit Union holds the senior. While Alliant has also filed a motion for relief, it is also actively

considering the Debtor and her co-debtor for a mortgage modification.

The Debtor commenced this case on June 2, 2022, by filing a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code. After the first meeting of creditors, confirmation on the Debtor's plan was continued from time-to-time; she was able to advance an amended plan when another creditor, Alliant Credit Union, amended its proof of claim (correctly reducing the prepetition arrearages they asserted that they were owed), and her amended plan was confirmed on February 27, 2023. Her amended plan provides for (as relevant here) a 100% recovery to the Debtor's allowed unsecured claims, as well as all prebankruptcy arrearages owed to U.S. Bank. As of this writing, U.S. Bank has been paid $39,908.16 towards their arrearage claim, through payments cycling through the standing trustee.

On October 24, 2023, U.S. Bank filed the Motion, alleging that they are entitled to relief from the automatic stay pursuant to 11 U.S.C. 362(d)(1) due to a postpetition default in direct payments that the confirmed plan provides for them. The Motion, its payment history, and this Court's "required statement to accompany motions for relief from the automatic stay" are attached hereto as **Group Exhibit A**. The value of the property, as asserted by the required statement, is premised on the Debtor's petition date schedules, and is long-outdated.

U.S. Bank does not allege that they are not adequately protected (the Bankruptcy Code's sole example of "cause" under 11 U.S.C. 362(d)(1)), or that the Debtor lacks equity in the Property and the Property is not necessary to an effective reorganization (grounds for relief under 11 U.S.C. 362(d)(2)). No bad faith on the Debtor's part is alleged. U.S. Bank only asserts that it is entitled to relief as a consequence of a default in direct payments to it, postpetition.

The Motion was heard on November 6, 2023, and again on December 4, 2023. At the latter hearing, the Court indicated that the Debtor would have until December 18, 2023, to respond

to the Motion if she chose.

## <u>ARGUMENT</u>

Though the Debtor does not dispute the validity of U.S. Bank's claim, nor the value of the default in payments alleged by the Motion, "cause" for relief from the stay under the Code is not found here.

The term "cause" as used in section 362(d)(1) requires more than simple nonpayment. *Matter of Lipply*, 56 B.R. 524, 528 (Bankr. N.D.In. 1986). Factors generally looked-to in determining whether to modify the stay for "cause" include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay were not modified, and the proportionality of the harms from modifying or continuing the stay. *In re Morrow*, 495 B.R. 378, 385 (Bankr N.D.Ill 2013), *citing Milne v. Johnson (In re Milne)*, 185 B.R. 280, 283 (Bankr N.D.Ill. 1995). A debtor's failure to make postpetition payment "does not *ipso facto* establish cause for relief." *Mendoza v. Temple-Inland Mortg. Corp. (In re Mendoza)*, 111 F.3d 1264, 1271 (5th Cir. 1997). Alleging defaults alone, without anything more, is generally insufficient. *Morrow*, 495 B.R. at 385, *citing In re Moore*, 450 B.R. 849, 852 (Bankr. N.D.In. 2011). But "defaults" is the only thing that U.S. Bank presents in its Motion.

However, U.S. Bank is protected by a significant equity cushion (as will be detailed below) and the nonpayment at issue is due to circumstances outside the Debtor's family's control, and are likely to be resolved in short order. Furthermore, the balance of hardships between the Debtor (and her spouse, the co-Debtor) and U.S. Bank weighs in favor of declining U.S. Bank relief at this time.

Maintenance of the automatic stay, for a period not less than six months, to enable further

evaluation, is the appropriate course of action in this particular case.

    1.  <u>U.S. Bank is fully-protected by an equity cushion.</u>

An equity cushion is regularly considered a species of adequate protection, sufficient to protect a creditor's interests following a request for relief from the automatic stay. *In re Mellior*, 734 F.2d 1396, 1400 (9th Cir. 1984). The existence of an equity cushion starts with the value of the property, deducts senior liens or encumbrances, and assesses whether there is sufficient remaining equity to protect the lien in question. *In re Hollister*, 628 B.R. 154, 159 (Bankr. C.D.Ca. 2021). There is such a cushion here.

At this time, according to well-known real estate valuation website zillow.com, the Property is worth about $1,538,400. https://www.zillow.com/homes/2036-W-Barry-Ave-Chicago,-IL-60618_rb/3730852_zpid/, accessed Dec. 18, 2023. This is probably low. Attached as **Exhibit B** to this motion is a sworn amended schedule A/B, reflecting a value of $1,575,000, attested-to by the Debtor on account of her familiarity with the neighborhood and awareness of the Property's condition. Even if the value of the property is $1,538,400, however, U.S. Bank would be paid-in-full if the property were to be sold. Attached to as **Group Exhibit C** are recent payoff statements for Alliant Credit Union and U.S. Bank.

Even at a value of $1,538,400 (a figure which the Debtor declares under penalty of perjury is too-low):

- Assume 6% costs of sale, so subtract $92,304: <u>$1,446,096</u> remains.
- Assume 110% of the 2023 property taxes (due in 2024) will be paid at closing, to cover those taxes and other miscellaneous costs, so subtract $22,433.83: <u>$1,423,662.17</u> remains.[1]
- Subtract Alliant Credit Union's payoff of $1,066,695.97: <u>$356,966.20</u> remains.
- That remaining amount is comfortably in excess of U.S. Bank's payoff, $265,352.19.

---

[1] The PIN for the property is 14-30-106-067-0000, and publicly-available records from the County Treasurer's website correctly reflect that all currently-due property taxes have been paid.

The risk that U.S. Bank will end up losing the value of their lien pales to the risk that defending the foreclosure on her home will sap the Debtor's money and resources, harming her ability to fund the chapter 13 plan and pay her claims. U.S. Bank does not allege a lack of equity in the property (appropriately; it would be their burden to show under 11 U.S.C. 362(g)(1), and they cannot do so) and though the Debtor is not a real estate professional, her statement under oath concerning her home's value should be given weight.

2.   The default in payments is due to circumstances outside the Debtor's control.

The Debtor owns the Property in tenancy by the entireties with her husband, David Smat. David is a businessperson.

As the declaration attached hereto as **Exhibit D** makes clear, David is a decorated business leader, and is the sole member of iNNOVATIVE Strategy Group, LLC. He and iNNOVATIVE serve as consultants for business entity acquisitions, and are paid consulting fees attendant to closed transactions. David is attempting to close an active deal that would generate $270,000 to $300,000 within a few months of its closure.

The Debtor's (and David's) inability to service the monthly payments to U.S. Bank arises from iNNOVATIVE's slow business as a consequence of rising interest rates and, before that, the COVID-19 pandemic. David has had many high-income years in the past. While the future is never guaranteed, David has an active sales lead that would (if successful) pay within about three months, and so (at minimum) U.S. Bank's motion for relief should be entered and continued for six months, or granted with a six-month effective date, to see if a full cure can be made.

3.   No other species of cause exists here.

Quoted above, this Court's *Morrow* decision Factors generally looked-to in determining whether to modify the stay for "cause" include interference with the bankruptcy, good or bad faith

5

of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay were not modified, and the proportionality of the harms from modifying or continuing the stay. *In re Morrow*, 495 B.R. at 385.

None of these conditions have been alleged here. There has been no interference with the bankruptcy and no bad faith is alleged. Injury to the Debtor (and to the feasibility of the Debtor's 100% plan) if the stay were modified to force the Debtor to defend a foreclosure suit would greatly outweigh the benefit that would flow to U.S. Bank for getting to prosecute such a suit.

4.  Though not squarely applicable here, *Fernstrom* is instructive.

Akin to the factors for "cause" cited in *Morrow*, though in a slightly-different context, the Seventh Circuit Court of Appeals has provided guidance for when cause, under 362(d)(1), exists to lift a bankruptcy stay to permit litigation to proceed when that litigation would otherwise remain stayed by the 362(a) automatic stay. *Matter of Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir. 1991). Bankruptcy Courts in this District have applied this guidance outside of its original context, noting that "the *Fernstrom* factors are the only cogent test for cause" that the Seventh Circuit has handed down. *In re D/C Distribution, LLC*, 617 B.R. 600, 611 (Bankr. N.D. Ill. 2020).

Fernstrom lists three factors, asking whether: (a) any "great prejudice" to either the bankrupt estate or the debtor will result from the order granting relief, (b) the hardship to the non-bankrupt party (here, U.S. Bank) by maintenance of the stay "considerably outweighs" the hardship to the debtor, and (c) whether the creditor has a probability of prevailing on the merits.

Taking the first two considerations together, the hardship to the Debtor and the estate that would arise from stay relief has already been made clear. While U.S. Bank had brought a foreclosure suit against the Debtor before the instant chapter 13 was filed (*U.S. Bank N.A. v. Smat,*

*et al.*, case 21-ch-04671 at the Circuit Court of Cook County), and U.S. Bank had filed a motion for summary judgment in that case (and attendant motions to dismiss unknown owners and nonrecord claimants, motion to appoint selling officer, and motion for entry of judgment), these motions were withdrawn by U.S. Bank in August of 2022, and no harm would befall them if they had to wait a period of time before these motions could be refiled. As noted already, U.S. Bank has received almost $40,000.00 in payments through the standing trustee.

To ask whether U.S. Bank would prevail on the merits is, given the rising value of the property, a relatively-minor inquiry. They probably would, but all the Smats need is more time to pay them in full anyway. Either U.S. Bank will get paid now, or will get paid later, but they are adequately protected by the equity in the Smats' property all the while. Due to the slowdown in David's business, which arose from situations outside David's control, the household suffered a cash flow shortage, that is in the process of being rectified now.

Wherefore the Debtor, Tina Smat, prays this Court enter an appropriate order denying U.S. Bank's Motion for Relief from the Automatic Stay and Co-Debtor stay, or in the alternative, enter and continue the motion for a period of no less than 180 days, or in the alternative, grant the motion with an effective date not less than 180 days hence.

Dated:  October 11, 2023                  Respectfully submitted,

                                          **Tina Smat**,

                                          By: */s/ Justin R. Storer*

Justin R. Storer (ARDC 6293889)
Law Office of William J. Factor, Ltd.
105 W. Madison St., Suite 1500
Chicago, Il 60602
312.373.7226
jstorer@wfactorlaw.com