IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Tina Smat, | ) | Case no. 22-06253 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |
| | ) | |

**REPLY OF U.S. BANK, N.A. TO DEBTOR'S RESPONSE TO MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY U.S. BANK, N.A.**

U.S. Bank N.A. (**"U.S. Bank"**) now comes in reply to the response of Tina Smat (**"Debtor"**) to the motion for relief from the automatic stay (the **"Motion"**) filed by U.S. Bank through which it seeks relief from the automatic stay to pursue nonbankruptcy remedies relating to 2036 W. Barry Avenue, Chicago, IL 60618 (the **"Property"**).

**BACKGROUND**

U.S Bank holds the second mortgage on the debtor's residence commonly known as 2036 W. Barry Avenue, Chicago, IL.  The debtor's non-filing spouse is a co-obligor on the note and the mortgage.  On June 2, 2022 the Debtor filed this Chapter 13 bankruptcy case presumably to protect the residence which is the subject of two foreclosure cases pending in the Circuit Court of Cook County—Alliant Credit Union v. Smat, 18ch10688 and U.S. Bank, N.A. v. Smat, 21ch04671.  There is only one other general unsecured creditor in the case.  Alliant Credit Union holds the first mortgage on the property.

On February 27, 2023 the court confirmed the debtor's first amended plan (docket no. 39).  The plan provides for the debtor to directly make regular monthly mortgage payments on

1

both mortgages, and retire the arrearages on both mortgages with regular payments to the trustee.

As of August 25, 2023, the date Alliant, the first mortgage, filed its motion for relief, the Debtor had not made a post-petition mortgage payment since January 18, 2023. The first mortgage secures an adjustable rate note. On March 1, 2023, due to a payment change, the regular monthly mortgage payment increased from $3,858.31 to $8,835.05. The post-petition arrears at that time were $72,301.85. On October 1, 2023, due to another payment change, the mortgage payment increased to $9,653.42. Assuming no additional payments have been made since the motion for relief was filed, the post-petition default on the first mortgage would be $119,750.58 through and including the January 2024 payment.

The last post-petition payment the debtor made to U.S. Bank was on March 31, 2023. The post-petition default has grown to $22,905.90 through and including the December 2023 payment.

According to the National Data Center website, the last trustee payment the Debtor made was on September 15, 2023. The default on trustee plan payments is $28,710.00 through and including the December 2023 payment. The next plan payment of $9,570.00 comes due January 2, 2024.

### ARGUMENT

Do defaults under a confirmed Chapter 13 plan constitute cause under Section 362(d)(1) of the Bankruptcy Code?

"What constitutes cause under Section 362(d)(1) other than lack of adequate protection has been developed on a case by case basis." *In Re Morrow*, 495 B.R. 378,385 (Bankr N.D. Ill

2

2013) citing *Milne v. Johnson (in Re Milne)* 185 B.R. 280, 283 (Bankr N.D. Ill. 1995). The Debtor correctly points out that the "Factors generally looked-to in determining whether to modify the stay for "cause" include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay were not modified, and the proportionality of the harms from modifying or continuing the stay. *In Re Morrow*, 495 B.R. 378, 385. These factors are generally looked-to, but they are not the only considerations when considering a motion for relief once a Chapter 13 plan has been confirmed."

"The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). The court in In *Re Morrow*, in the section of that opinion dealing with post-confirmation relief from the stay stated, "The courts that have considered postconfirmation relief from stay motions in any detail have, without fail, concluded that after confirmation, a movant's grounds generally are limited to postconfirmation defaults on the debtor's plan." *Citing In Re Randall*, 98 B.R. 916, 918. (Bankr. N.D. Ill. 1989). "Further, postconfirmation grounds appear to rest entirely on the "for cause" provisions of section 362(d)(1)." *In Re Morrow*, 495 B.R. 378, 387. "The issues of adequate protection and equity in the property are irrelevant in the face of postconfirmation payment defaults because creditors are entitled to rely upon the debtors' responsibilities to make their post confirmation payments." *In Re Morrow*, 495 B.R. 378, 387 citing *In Re Davis*, 64 B.R. 358, 359-360. "And such cause is, most specifically, the debtor's adherence to or deviation from its plan." *In Re Morrow* citing *Americredit Financial Services v. Nichols* (*In Re Nichols*), 440

3

F.3d 850, 856 (6th Cir. 2006).  "A majority of courts that have construed the "for cause" provision of Section 362(d)(1) have found that a debtor's failure to make payments to the creditor after confirmation of the plan can constitute cause to modify or lift the automatic stay." *In Re Morrow* citing *In Re Quinlan*, 12 B.R. 516, 517 (Bankr. W.D. Wis. 1981). (Finding that a debtor's "unexcused failure" to make direct payments to a creditor in accordance with a confirmed Chapter 13 plan constituted cause to grant relief from the stay).

The defaults to U.S. Bank, and to Alliant, the first mortgage, and to the trustee in this case are enormous. They are not *mere* defaults.  And those defaults constitute cause to lift the automatic stay.  Those defaults are a result of the Debtor's failure to make post-confirmation payments to her secured creditors and the trustee over a considerable period of time.  Every payment the Debtor fails to make on her first mortgage further erodes any equity cushion that may exist in this case.  U.S. Bank has pleaded facts supporting cause under Section 362(d)(1) of the Bankruptcy Code.

### The Equity Cushion

U.S. Bank worked up its own assessment of the equity cushion in the property.  First, it obtained a present value from another real estate valuation website, Homes.com https://www.homes.com.  According to Homes.com the property is worth about **$1,467,489.00.**

- Assume a broker's commission of 5%, so subtract $73,374.45.
- Assume seller's share of transfer tax of $4,402.00

4

**The mortgages and real estate taxes:**

The Mortgages:  Assume it would take three months to market the property, get a contract, and close the deal.  A closing date of April 1, 2024.  This is optimistic.  Also assume no further payments are made on either mortgage.  We will be using the payoff information supplied in Debtor's response and will only be making additions of the per diem interest of $147.83 for Alliant and $47.88 for U.S. Bank.

Alliant payoff:  $1,066,695.97 as of 01/02/2024 plus 90 days interest $13,314.0 = **$1,080,000.99**

U.S. Bank:  $265,352.19 as of 12/01/2023 plus 120 days interest $5,745.66 = **$271,097.85**


The Real Estate Taxes:

-Assume 110% of the 2022 real estate tax bill of $20,394.39 for the 2023 taxes = **$22,433.83**
-Assume a tax proration for the 2024 tax year for the first 90 days of 2024 based on the $22,433.83 amount above.
 $22,433.83/365 = $61.46 x 90 days = **$5,531.00**


| | | |
|---|---|---|
| **Sales Price** | | $1,467,489.00 |
| | | |
| **Broker commission** | $73,374.45 | |
| **Transfer tax** | $4,402.00 | |
| **Alliant payoff** | $1,080,000.99 | |
| **U.S. Bank Payoff** | $271,097.85 | |
| **2023 real estate taxes** | $22,433.83 | |
| **2024 real estate tax proration** | $5,531.00 | |
| **Total Deductions from sale's price** | $1,456.840.12 | $1,456,840.12 |
| | | |
| **Equity cushion** | | $10,648.88 |

The debtor, in her initial schedules estimated that the value of the property in June 2022 was $990,000.00.  A year and a half later in her amended Schedule A, she estimates that the property is worth $1,575,000.00.  This would be a remarkable increase in value to the property in such a short amount of time.  U.S. Bank believes its numbers as to value and costs of sale are more realistic.

5

An $10,648.88 equity cushion, if it exists at all, will not last long with mortgage interest and real estate taxes accruing at the rate of $257.17 per day.  U.S. Bank is not, or shortly will not be, adequately protected.

WHEREFORE, U.S. Bank, N.A. prays this Court enter an order lifting the automatic stay and co-debtor stay to allow U.S. Bank to pursue its in rem remedies against the property.

January 4, 2024                                        Respectfully submitted,

                                             U.S. Bank, N.A.

                                             By: /s/Michael Kelleher

Michael Kelleher
Codilis & Associates
15W030 N. Frontage Road
Burr Ridge, IL 60527
(630)794-5300
Michael.kelleher@il.cslegal.com